**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA**

                     **v.**                                  **1:06-CR-52**
                                                                 **(FJS)**

**JEAN MONARCH PHILISTIN,**

                             **Defendant.**
_____

**APPEARANCES**                           **OF COUNSEL**

**OFFICE OF THE UNITED**           **JAMES C. WOODS, AUSA**
**STATES ATTORNEY**
218 James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924
Attorneys for United States of America

**KINDLON SHANKS & ASSOCIATES**    **KENT B. SPROTBERY, ESQ.**
74 Chapel Street                          **TERENCE L. KINDLON, ESQ.**
Albany, New York 12207
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

In a three-count Superceding Indictment, the Government charged Defendant Philistin

and Defendant Ferland'son Desriveaux with (1) possession with intent to distribute 3, 4-

methylenedioxymethamphetamine ("MDMA"), also known as ecstasy; (2) conspiracy to possess

with intent to distribute ecstasy; and (3) conspiracy to attempt to import ecstasy into the United

States.  Following trial, on February 20, 2007, a jury convicted Defendant Philistin and acquitted

Defendant Desriveaux on all three counts.  Currently before the Court is Defendant Philistin's

motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

## II. BACKGROUND

The charges in this case arose from Defendants' attempt to enter the United States from Canada at the Champlain Port of Entry on February 4, 2006.  At that time, government agents stopped and searched Defendants and their rental van.  They found approximately 45,300 tablets of ecstasy contained in two vacuum-sealed bags.  The tablets were secreted inside twenty-five pound boxes of loose, edible peanuts.

Before trial, Defendant Philistin requested that the Court sever Defendants' trials based on a purported "significant difference in the quality and quantity of evidence against Mr. Philistin versus that against Mr. Desriveaux."  *See* Dkt. No. 22 at 3.  Moreover, Defendant Philistin argued that Defendant Desriveaux was likely to make statements implicating him at trial.  *See id.* at 4.  On December 29, 2006, the Court denied Defendant Philistin's motion for severance, stating that "the risk of prejudice to Defendants, if any, would be slight."  *See* Dkt. No. 34 at 3.  Moreover, the Court determined that it could cure any risk of spillover evidence or variance in proof by means short of severance, including limiting instructions and redactions, if appropriate.  *See id.* (citing *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003); *United States v. Yousef*, 327 F.3d 56, 150 (2d Cir. 2003)).

At trial, Defendant Desriveaux testified that he worked for Defendant Philistin as a driver and that Defendant Philistin's wife called Defendant Desriveaux and asked him to pick up the rental van.  Defendant Desriveaux also testified that he picked up the van and dropped it off at Defendant Philistin's residence.  Most significantly, Defendant Desriveaux testified that Defendant Philistin later picked him up in the van, which was already loaded with food products.  Defendant Philistin did not testify at trial.

Defendant Desriveaux's counsel, Mr. Sacco, emphasized this testimony in his closing argument about his client's innocence, stating that "'he told you so – he got up there and looked you in the eye and told you that the van was already loaded when Mr. Philistin drove up – my client didn't know anything about these drugs.'" *See* Dkt. No. 64 at 3.

As noted above, the jury ultimately convicted Defendant Philistin and acquitted Defendant Desriveaux on all three counts.


## III. DISCUSSION

Defendant Philistin requests that the Court order a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, arguing that "the Court erroneously failed to grant his motion for severance, and manifest injustice resulted." *See id.* at 1.  He argues that, in some circumstances, the defendants present "'mutually antagonistic or irreconcilable defenses'" that are so prejudicial as to require severance.  *See id.* (citing *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998); *Zafiro v. United States*, 506 U.S. 534 (1993)).  Defendant Philistin further argues that,

> [a]s stated in [*United States v.*] *Tootick*, [952 F.2d 1078 (9th Cir. 1991)], this is a case where "*all evidence having the effect of exonerating one defendant implicitly indicts the other*."  As in [*United States v.*] *Rucker*, [915 F.2d 1511 (11th Cir. 1990)], it is a case with two men in a car which contains drugs – the defense of each of them is lack of knowledge of the presence of the drugs, which necessarily points the finger at the other defendant.  In the instant case, the situation was exacerbated by the fact that Mr. Desriveaux was able to testify, implicitly implicating his co-defendant, but Mr. Philistin was not in a position to testify.

*See id.* at 3.

In response, the Government asserts that severance is not required when defendants present mutually exclusive defenses and that mutually exclusive defenses are not *per se* prejudicial. *See* Dkt. No. 70 at 5 (citing *Zafiro*, 506 U.S. at 535-36, 538). The Government states that *Tootick* and *Rucker* were pre-*Zafiro* decisions and that the *Zafiro* Court upheld a denial of severance concerning the "blame-shifting testimony of co-defendant drug gang members who claimed varying degrees of ignorance about the contents of a box of illegal narcotics found in their possession." *See id.* at 6 (citations omitted). The Government also notes that the Supreme Court has expressed a preference for measures less drastic than severance, including limiting instructions. *See id.* (citation omitted).

Moreover, the Government argues that Defendant Desriveaux's testimony does not constitute an antagonistic defense implicating Defendant Philistin. The Government explains that Defendant Desriveaux did not testify that Defendant Philistin knew about the drugs, that he was involved in drug dealing or associated with individuals involved in drug dealing, or that he was the source of the food products stored in the van. Therefore, the Government contends that Defendant Desriveaux's testimony did not constitute finger-pointing and that the testimony did not hamper Defendant Philistin from asserting a lack-of-knowledge defense.

Finally, the Government asserts that, if the Court erred in not severing Defendants' trials, the error was harmless. In support of this assertion, the Government states that the evidence at trial showed that Defendant Philistin and his wife were engaged in the business of shipping food products into the United States, that he told customs agents that he did not have food products in the van, that he had notebooks with figures computing his mule fee, that his cellular phone

-4-

records showed suspicious activity, and that his actions were consistent with Senior Investigator

Mercado's expert testimony about the actions of drug mules crossing the border.

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate

any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).

However, the Second Circuit has recently explained that, in considering a defendant's Rule 33

motion, the trial court ultimately must decide whether allowing the guilty verdict to stand would

result in manifest injustice.  *See United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006)

(quotation omitted).  Therefore, to justify granting a new trial, "'[t]here must be a real concern

that an innocent person may have been convicted.'"  *Id.* (quotation omitted).

"Defenses are mutually antagonistic when accepting one defense requires that 'the jury

must of necessity convict a second defendant.'"  *United States v. Yousef*, 327 F.3d 56, 151 (2d

Cir. 2003) (quotation and other citation omitted).  However, the presentation of mutually

antagonistic defenses is not *per se* prejudicial.  *See id.* (quoting *Zafiro*, 506 U.S. at 538-39, 113

S. Ct. 933).  Furthermore, even if prejudice is shown, the district court may exercise its

discretion to tailor appropriate relief if necessary.  *See Zafiro v. United States*, 506 U.S. 534,

538-39 (1993) (citations omitted).  Therefore, a court should only grant severance when a joint

trial would compromise a defendant's specific trial right or prevent the jury from making a

reliable determination of guilt or innocence.  *See id.* at 539.

This case lacked the presence of mutually antagonistic defenses.  Although Defendant

Desriveaux's testimony apparently convinced the jury that he had no knowledge of the drugs

contained in the boxes of peanuts stored in the rental van, it did not render futile a similar lack-

of-knowledge defense on Defendant Philistin's part.  Defendant Desriveaux's testimony merely

established that he dropped the van off at Defendant Philistin's residence and that Defendant

Philistin picked him up later with a loaded van.  His testimony did not refer to the van's location

during the intervening time period.  Moreover, Defendant Desriveaux did not testify about who

loaded the van.  Therefore, Defendant Philistin could have argued, and the jury could reasonably

have determined, that some other person was responsible for putting the ecstasy in the peanut

boxes.  Indeed, during an effective cross-examination of Senior Investigator Mercado, Defendant

Philistin's counsel, Mr. Sprotbery, went to great lengths to establish the potential that both

Defendants were "blind mules" who unknowingly transported the drugs.  Consequently, it

cannot be said that Defendant Desriveaux's testimony required the jury to convict Defendant

Philistin.  *See Yousef*, 327 F.3d at 151 (quotation and other citation omitted).

Furthermore, the Court provided adequate instructions to the jury concerning the rights of

the individual defendants to safeguard Defendant Philistin from suffering prejudice as a result of

Defendant Desriveaux's testimony.  Specifically, the Court gave the following instructions:

> You are to decide this case solely on the basis of the evidence and
> remember that the attorneys' statements and their characterizations
> of the evidence are not evidence.

> * * *

> Defendant Jean Monarch Philistin did not testify in this case.
> Under our constitution, he has no obligation to testify or to present
> any other evidence because it is the prosecution's burden to prove
> the defendant guilty beyond a reasonable doubt.  The burden
> remains with the prosecution throughout the entire trial and never
> shifts to the defendants.  The Defendants are never required to
> prove that they are innocent.

> You may not attach any significance to the fact that

-6-

Defendant Philistin did not testify, nor draw any adverse inference
against him because he did not take the witness stand.

* * *

Defendants have denied the charges made against them.  Again,
Defendants have no burden of proof whatsoever in this case.  They
are under no obligation to produce any witnesses, and as I have
previously stated, they have no obligation to testify.  They are
presumed to be innocent, and the presumption of innocence
continues through the trial and during your deliberations.  The
presumption of innocence is overcome when, and only when, the
Government establishes a Defendant's guilt by proving each
element of the offense you are considering beyond a reasonable
doubt.

* * *

You must consider each charge, and the evidence pertaining to it,
separately.  Thus, the fact that you may find that one Defendant is
guilty or not guilty of one of the offenses charged should not
control your verdict as to any other offense charged.

You must also give each Defendant your independent,
separate, and individual evaluation.  The fact that you may find
one Defendant guilty or not guilty of one of the offenses charged
should not, in any way, affect your verdict as to the other
Defendant.

These instructions are similar to those found to have "sufficed to cure any possibility of

prejudice" in both *Zafiro* and *Yousef*.  *Zafiro*, 506 U.S. at 541 (citation omitted); *see also id.* at

540 (stating that "a fair trial does not include the right to exclude relevant and competent

evidence.  A defendant normally would not be entitled to exclude the testimony of a former

codefendant if the district court did sever their trials, and we see no reason why relevant and

competent testimony would be prejudicial merely because the witness is also a codefendant");

-7-

*Yousef*, 327 F.3d at 152 (quotation omitted).

Finally, the Government presented an abundance of evidence from which a reasonable jury could have found Defendant Philistin guilty independent of Defendant Desriveaux's testimony.  It established that Defendant Philistin approached the border in a rental van, that a large quantity of ecstasy tablets were secreted in boxes of peanuts inside the van, that Defendants had previously crossed the border with food products, that Defendants told government agents that they did not have food products in the van, that Defendant Philistin had suspicious cellular phone activity during the relevant time period, that it was highly unlikely that the drugs were placed in the boxes at the peanut-packing facility, and that figures in Defendant Philistin's notebooks were consistent with calculations of a drug mule's fee.  Moreover, the Government proffered the expert testimony of Senior Investigator Mercado, which tended to show that Defendants' activities on February 4, 2006, were consistent with patterns observed in drug-trafficking investigations.  In light of the quantity and quality of this independent evidence, it cannot be said that Defendant Desriveaux's testimony prevented the jury from making a reliable determination of Defendant Philistin's guilt or innocence.  *See Zafiro*, 506 U.S. at 539. Therefore, there is no "'real concern that an innocent person may have been convicted.'"  *Snype*, 441 F.3d at 140 (quotation omitted).

## IV. CONCLUSION

Accordingly, after carefully considering the parties' arguments in support of, and in opposition to, the current motion, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant Philistin's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is **DENIED**.

**IT IS SO ORDERED.**

Dated:  May 8, 2007

        Syracuse, New York

Frederick J. Scullin, Jr.

Senior United States District Court Judge